**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kenneth Long, the surviving father of Cynthia Jo Johnson, deceased, as Guardian and/or next best friend of minors, Christopher Dean Johnson and Sean McKnight; and Cherish Leighan Rogers, <br><br>Plaintiffs, <br><br>vs. <br><br>TRW Vehicle Safety Systems, Inc., a foreign corporation, <br><br>Defendant. | No. CV-09-2209-PHX-DGC <br><br>**ORDER** |

This case arises from a single-vehicle rollover accident that occurred nearly six years ago in La Paz County, Arizona. Plaintiffs assert strict product liability, negligence, and wrongful death claims against seatbelt manufacturer TRW Vehicle Safety Systems, Inc. Doc. 1-1 at 5-11. Defendant has filed a motion for summary judgment (Doc. 115), motions to exclude the testimony of Plaintiffs' expert witnesses (Docs. 118, 119), and a motion to strike Plaintiffs' controverting statement of facts (Doc. 154). For reasons stated below, the motions will be denied.[1]

---

[1] The requests for oral argument are denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

**I.     Background.**

On June 19, 2005, Phillip McKnight drove his 2003 Ford Expedition west on I-10 with Sean McKnight, Cynthia Jo Johnson, Christopher Johnson, Cherish Rogers, and several other passengers. The vehicle became uncontrollable and rolled over three times after the tread separated from the right rear tire. Cynthia Jo and Sean were ejected from the vehicle. Tragically, Cynthia Jo died and Sean suffered severe head trauma.

Two years later, Plaintiffs and several other persons brought suit in state court against Ford Motor Company and Continental Tire North America, Inc. *See Long v. Ford Motor Co.* ("*Long I*"), No. CV2007-010952 (Ariz. Super. Ct. June 18, 2007). TRW Automotive U.S., LLC ("AUS"), the alleged manufacturer of the vehicle's seatbelts, was added as a defendant in October 2007. *See id.* The case was then removed to this District Court and assigned to Judge Teilborg. *Long I*, No. CV-07-2206-PHX-JAT (D. Ariz. Nov. 14, 2007); Docs. 1, 9.

In November 2008, more than eight months after the deadline to amend pleadings had expired, Plaintiffs sought leave to replace Defendant AUS with TRW Vehicle Safety Systems, Inc. ("VSSI") on the ground that VSSI was the actual manufacturer of the seatbelts and thus the proper defendant in the suit. *Long I*, Docs. 26, 84. Judge Teilborg denied the motion to amend, finding that Plaintiffs' decision not to join VSSI prior to the deadline was tactical and Plaintiffs had not otherwise shown good cause for the delay. Doc. 101. Plaintiffs settled with Ford and Continental and, on July 29, 2009, Judge Teilborg granted Plaintiffs' motion to voluntarily dismiss the claims against AUS without prejudice. Docs. 102, 105.

Several weeks after the dismissal of *Long I*, Plaintiffs filed the instant action against VSSI in state court. *See Long v. TRW Vehicle Safety Sys., Inc.* ("*Long II*"), CV2009-026565 (Ariz. Super. Ct. Aug. 19, 2009). The case was removed to this Court one month later. *Long II*, No. CV-09-2209-PHX-DGC (D. Ariz. Oct. 21, 2009); Doc. 1. Defendant VSSI moved to dismiss the complaint on the ground of claim preclusion

(res judicata). Doc. 10. The Court denied the motion in an order dated February 26, 2010. Doc. 20.

## I.     Summary Judgment Standard.

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## II.    Summary Judgment Motion.

Defendant seeks summary judgment on several grounds: (1) Plaintiffs' claims are barred by the doctrines of claim preclusion and duplicative litigation, (2) Plaintiffs are without admissible and probative expert testimony and thus cannot prove their strict product liability claim,[2] (3) the violent nature of the accident constitutes a superseding legal cause of Plaintiffs' injuries, and (4) Defendant cannot be held liable as a mere component supplier to Ford. Doc. 115. The Court will address these arguments below.

### A.     The Doctrines of Claim Preclusion and Duplicative Litigation.

In seeking summary judgment on the ground of claim preclusion, Defendant essentially reasserts the arguments made in support of its motion to dismiss. *See* Docs. 10 at 4-9, 115 at 12-13. The Court previously rejected those arguments, finding that the claims asserted against VSSI in this case are not barred by the doctrine of claim

---

[2] Defendant also asserts that if Plaintiffs cannot prevail on the strict product liability claim, then the negligence and wrongful death claims necessarily fail. Doc. 115 at 11 n.4.

preclusion because AUS and VSSI are different parties and *Long I* produced no final judgment on the merits with respect to the claims asserted against AUS. Doc. 20 at 3-7. The Court finds no basis to deviate from that conclusion.

Defendant further asserts that Plaintiffs claims are barred by the related rule against duplicative litigation. Doc. 115 at 13-14.[3] This rule prevents plaintiffs from maintaining "'two separate actions involving the same subject matter at the same time in the same court and against the same parties.'" *Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007) (citation omitted). Because *Long I* was dismissed prior to the filing of this action, there is no other ongoing litigation. The Court does not find that Plaintiffs filed the case at bar merely to circumvent the denial of their untimely motion to amend in *Long I*. *See* Doc. 20 at 8 (distinguishing *Estrada v. City of San Luis*, No. CV-08-0945-PHX-DGC, 2008 WL 3286112 (D. Ariz. Aug. 7, 2008)). Moreover, while the claims asserted in *Long I* and this case are similar, they are brought against different parties – AUS in *Long I* and VSSI in this action. *See Atl. Recording Corp. v. Andersen*, No. CV-05-933-AS, 2008 WL 151825, at *1-2 (D. Or. Jan. 14, 2008) (distinguishing *Adams* because the plaintiff was not pursuing duplicative litigation and previously had not litigated claims against the current defendant). In the exercise of its discretion, *see Adams*, 487 F.3d at 688, the Court declines to dismiss Plaintiffs' claims under the duplicative litigation doctrine.

**B.     No Expert Testimony Is Needed to Establish a Design Defect.**

Plaintiffs allege that the seatbelts worn by Cynthia Jo Johnson and Sean McKnight, and designed by Defendant VSSI, were defective in that they failed to restrain Cynthia Jo and Sean during the rollover accident. Doc. 1-1 at 5-13.[4] Summary judgment

---

[3] Defendant previously raised this defense in its reply to the motion to dismiss (Doc. 19 at 5-6), but the Court declined to consider it on the ground that defenses raised for the first time in a reply brief are deemed waived (Doc. 20 at 8 n.5).

[4] There is a genuine dispute as to whether Cynthia Jo was wearing her seat belt at the time of the accident. *See* Docs. 115 at 5-6 & n.2, 148 ¶ 5. For purposes of Defendant's summary judgment motion, this factual dispute must be resolved in favor of

is warranted, Defendant contends, because expert testimony is required to prove the alleged design defect and the testimony of Plaintiffs' experts is inadmissible and otherwise too speculative to establish a defect in the belts. Doc. 115 at 15-16. Plaintiffs argue, correctly, that the alleged defects in the seatbelts can be proven without expert testimony. Doc. 142 at 7-9. The Court will deny summary judgment in this regard.[5]

"A manufacturer is strictly liable for injuries caused by use of any product that was in a 'defective condition unreasonably dangerous.'" *Golonka v. GM Corp.*, 65 P.3d 956, 962 (Ariz. Ct. App. 2003) (quoting *Dart v. Wiebe Mfg., Inc.*, 709 P.2d 876, 878 (1985)). In Arizona, two models may be used to determine whether a product was defectively designed: the consumer expectation test and risk/benefit analysis. *Id.* Defendant's motion addresses only risk/benefit analysis, arguing that the claimed design defect will "require the production of expert testimony showing that the inherent risk of danger for the chosen design outweighs its benefits." Doc. 115 at 12.

Under the consumer expectation test, "the fact-finder determines whether the product 'failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonable manner.'" *Golonka*, 65 P.3d at 962 (quoting *Dart*, 709 P.2d at 879). No expert testimony is necessary to establish a design defect under the consumer expectation test because the test "focuses on the safety expectations of an ordinary consumer rather than those of an expert." *Bell v. BMW*, 181 Cal. App. 4th 1108, 1129 (Ct. App. 2010). Stated differently, "'where the minimum safety of a product is within the common knowledge of lay jurors, expert witnesses may not be used to demonstrate

---

Plaintiffs. *See Anderson*, 477 U.S. at 255. The Court does not find the affidavit testimony on this issue (Doc. 148-1 at 3) to be inadmissible "sham" testimony. *See Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). Nor does the Court find the evidence of seat belt use to be in "equipoise" such that it may not be submitted to the jury. *See* Doc. 157 at 6.

[5] The Court accordingly need not, at the summary judgment stage, decide whether the testimony of Plaintiffs' expert witnesses is admissible. The motions to exclude (Docs. 118, 119) will be denied without prejudice. Defendant may seek to exclude expert testimony at trial by filing motions in limine consistent with the separate order setting a final pretrial conference.

- 5 -

what an ordinary consumer would or should expect.'" *Id.* (quoting *Soule v. GM Corp.*, 8 Cal. 4th 548, 557 (1994)); *see Albee v. Continental Tire N. Am., Inc.*, --- F. Supp. 2d ----, 2011 WL 221421, at *3 (E.D. Cal. Jan. 21, 2011) (expert testimony unnecessary under consumer expectation test); *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 484 n.7 (6th Cir. 2008) (same); *Fisher v. Ford Motor Co.*, 13 F. Supp. 2d 631, 638 n.10 (N.D. Ohio 1998) (same). Application of the consumer expectation test is warranted where "the ordinary consumer, through the use of a product, has developed an expectation regarding the performance safety of the product." *Brethauer v. GM Corp.*, 211 P.3d 1176, 1183 (Ariz. Ct. App. 2010).

The Court finds persuasive the conclusion reached in *Brethauer* and several other cases that consumers have developed reasonable expectations about how safely seatbelts should perform. Our society is taught from a young age about the importance of "buckling up." "In short, most consumers use seatbelts daily and are familiar with their single, safety-related function: keeping belted passengers restrained within a vehicle." *Brethauer*, 211 P.3d at 1184. "When a seat belt, designed to be an instrument of protection, becomes an instrument of life-threatening injury, a consumer is justified in concluding that it did not perform as safely as promised." *GM Corp. v. Farnsworth*, 965 P.2d 1209, 1221 (Alaska 1998). Contrary to Defendant's assertion (Doc. 115 at 14), seatbelts are not complex products about which no ordinary consumer could form an expectation regarding their safety and performance in automobile accidents. *See Jackson v. GM Corp.*, 60 S.W.3d 800, 806 (Tenn. 2001) (rejecting similar argument); *see also Tran v. Toyota Motor Corp.*, 420 F.3d 1310, 1314 (11th Cir. 2005) (noting that the consumer expectation test applies to seatbelts under Florida law).

*Brethauer*'s conclusion that consumers have safety expectations about seatbelts is mere nonbinding dicta, Defendant asserts, because the conclusion was reached "in the context of an intermediate appellate court passing on – and affirming – a trial court's **failure** to instruct the jury about the consumer expectation test." Doc. 157 at 8

(emphasis in original). In affirming the defense verdict on the ground of harmless error, the court of appeals explicitly found that "the trial court erred by failing to instruct the jury on the consumer expectation test[.]" *Brethauer*, 211 P.3d at 1185. In making that finding, the court necessarily was required to "*decide* whether an ordinary consumer's expectation concerning a seatbelt's function equates to an expectation concerning the seatbelt's safety performance." *Id.* at 1183 (emphasis added). The court's affirmative answer to that question is not reasonably construed as mere nonbinding dicta. But even if it were to be so construed, it is nonetheless instructive as to how the Arizona Supreme Court would likely decide the issue. *See Ariz. Elec. Power Co-op, Inc. v. Berkeley*, 59 F.3d 988, 991 (9th Cir. 1995) (when deciding a novel state law issue, a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions and decisions from other jurisdictions); *see also Smith v. Allstate Ins. Co.*, 202 F. Supp. 2d 1061, 1064-65 (D. Ariz. 2002) (declining to certify a novel legal question to the state supreme court where precedents from other jurisdictions "appear to be nearly uniform – indicating a lack of serious debate").

Defendant's reliance on *Woodward v. Chirco Construction Co.*, 687 P.2d 1275 (Ariz. Ct. App. 1984), is misplaced. That case involved the alleged negligent construction of a house, and expert testimony was required because no ordinary homebuyer would know whether a reasonable builder in the community would have obtained a soil test prior to construction. 687 P.2d at 1277; *see also Pruitt v. GM Corp.*, 72 Cal. App. 4th 1480, 1483 (Ct. App. 1999) (the deployment of an air bag is not part of the "everyday experience" of the consuming public); *Soule v. GM Corp.*, 8 Cal. 4th 548, 556, 570 (1994) (no ordinary consumer would know whether a design defect allowed the vehicle's front wheel to break free, collapse rearward, and smash the floorboard into the plaintiff's feet).

Defendant cites *Gray v. GM Corp.*, 312 F.3d 240, 242 (6th Cir. 2002), for the proposition that expert testimony is required to prove claims of defectively designed

seatbelts in rollover cases. Doc. 157 at 8 n.3. But Gray does not discuss the consumer expectation test. Under Arizona law – the applicable law in this case – the consumer expectation test applies to claims that seatbelts were defectively designed in that they failed to restrain belted passengers. *See Brethauer*, 211 P.3d at 1183-84.

In summary, no expert testimony is necessary for Plaintiffs to prove their strict product liability claim. The Court will deny summary judgment to the extent Defendant argues that expert testimony is required and the testimony of Plaintiffs' experts is inadmissible and otherwise too speculative to create a triable issue. Docs. 115 at 14-16, 157 at 5-9; *see Martinez v. Terex Corp.*, 241 F.R.D. 631, 642 (D. Ariz. 2007) (denying summary judgment on design defect claim even absent expert testimony where guards installed on a cement mixer failed to prevent the plaintiff from being pulled under the mixer); *Anderson v. Nissei ASB Mach. Co.*, 3 P.3d 1088, 1092 (Ariz. Ct. App. 1999) (noting that generally the jury determines whether a product is defective and whether it proximately caused the plaintiff's injuries).

**C.     Causation.**

Defendant contends that the sheer violence of the rollover accident supersedes any seatbelt defect as the proximate cause of Plaintiffs' injuries. Doc. 115 at 16. "The proximate cause of an injury is defined in Arizona as 'that which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces and injury, and without which the injury would not have occurred.'" *Shelburg v. City of Scottsdale Police Dep't*, No. CV-09-1800-NVW, 2010 WL 3327690, at *9 (D. Ariz. Aug. 23, 2010) (quoting *Saucedo v. Salvation Army*, 24 P.3d 1274, 1278 (Ariz. Ct. App. 2001)). Generally, where "the violence of a crash is the effective efficient cause of plaintiff's injuries to the extent that it supersedes other factors such as defective design and makes them immaterial, the plaintiff cannot recover." *Endicott v. Nissan Motor Corp.*, 73 Cal. App. 3d 917, 926 (Ct. App. 1977). Under Arizona law, however, "[a] superseding cause, sufficient to become the proximate cause of the final result and relieve the defendant of

liability, arises only when the intervening force was unforeseeable and may be described, with the benefit of hindsight, as extraordinary." *Shelburg*, 2010 WL 3327690, at *9 (citing *Robertson v. Sixpence Inns of Am.*, 789 P.2d 1040, 1047 (Ariz. 1990)); *see Rossell v. Volkswagen of Am.*, 709 P.2d 517, 526 (Ariz. 1985); *Ontiveros v. Borak*, 667 P.2d 200, 206 (Ariz. 1983).

For several reasons, the Court cannot conclude as a matter of law that the severity of the rollover accident was a superseding cause of Plaintiffs' injuries. First, a jury might well conclude that when the driver of a large sport utility vehicle loses control due to a separated tire tread, it is foreseeable that the vehicle could rollover multiple times and become severely deformed. "'It is not necessary that Defendant[] foresaw the actual harm that occurred, only that the harm could occur.'" *Fletcher v. U-Haul Co. of Ariz.*, No. 2:07-cv-01193 JWS, 2008 WL 509331, at *2 (D. Ariz. Feb. 22, 2008) (quoting *Petolicchio v. Santa Cruz County Fair & Rodeo Ass'n, Inc.*, 866 P.2d 1342, 1349 (Ariz. 1994)). Second, even with the benefit of hindsight, a jury reasonably could conclude that a multiple-rollover accident following a tread separation "is not so extraordinary that a reasonable person would not anticipate this danger." *Id.* (a vehicle colliding with a van broken down on the side of a highway is not necessarily an extraordinary event). Third, where the alleged design defect increases the foreseeable risk of a particular harm occurring from an intervening force, the defendant is not relieved of liability. *See id.*; *Ontiveros*, 667 P.2d at 206. Plaintiffs note, correctly, that the accident in this case is an example of harm which seatbelts are designed to prevent. Doc. 142 at 18. Finally, there were seven people in the vehicle when it rolled over, but the two most seriously hurt were the only passengers whose seatbelts are alleged to have failed. A jury reasonably could infer that the alleged defective seatbelts "contributed at least 'a little'" to Plaintiffs' injuries. *Robertson*, 789 P.2d at 1047.

Defendant's reliance on *Estate of Bigham v. DaimlerChrysler Corp.*, 462 F. Supp. 2d 766 (E.D. Ky. 2006), is misplaced. That case involved "crashworthiness" claims

under Kentucky law, which required the plaintiff to establish (1) an alternative, safer design, (2) the injuries, if any, that would have resulted had the alternative design been used, and (3) some method of showing the extent of enhanced injuries attributable to the defective design. 462 F. Supp. 2d at 773. Defendant has cited no legal authority showing that Plaintiffs are required to make a similar prima facie showing under Arizona law. Moreover, a jury reasonably could conclude that the alleged defective seatbelts were a "substantial factor" in bringing about Plaintiff's harm. *Id.* at 778.

In summary, there is a triable issue as to whether the alleged design defect proximately caused Plaintiffs' injuries. The Court will deny summary judgment in this respect. *See Petolicchio*, 866 P.2d at 1348 (noting that proximate cause generally is question of fact for the jury).

### D. The Component Supplier Defense.

Defendant argues that because the seat belts at issue were designed to meet Ford's specifications, Defendant served only as a component supplier and therefore is relieved of any duty to analyze the design and assembly of the completed product. Doc. 115 at 17-18. Defendant cites no Arizona law in support of this argument. Even if the Court were to assume that the component supplier defense is available under Arizona law, the "defense requires a showing that the component part standing alone is not defective." *Yu-Santos v. Ford Motor Co.*, No. 1:06-CV-01773-AWI-DLB, 2009 WL 1392085, at *16 (E.D. Cal. May 14, 2009); *see* Restatement (Third) of Torts: Products Liability § 5. Defendant has not shown, as a matter of undisputed fact, that there was no defect in the component part. Summary judgment therefore will be denied with respect to the component supplier defense. *See Yu-Santos*, 2009 WL 1392085, at *16 (VSSI not relieved from liability where the alleged defect was in the seatbelt itself).

### III. Motion to Strike.

Plaintiffs' controverting statement of facts should be stricken, Defendant contends, because it avoids direct responses followed by citations to the record and includes facts

not directly responding to Defendant's own statement of facts. Doc. 154 at 2. The Court finds that the controverting statement of facts (Doc. 148) substantially complies with Local Rule of Civil Procedure 56.1(b). The motion to strike will be denied.

**IT IS ORDERED:**

1. Defendant's motion for summary judgment (Doc. 115) is **denied**.

2. Defendant's motions to exclude the testimony of Plaintiffs' expert witnesses (Docs. 118, 119) are **denied** without prejudice. Defendant may seek to exclude expert testimony at trial by filing appropriate motions in limine.

3. Defendant's motion to strike Plaintiff's controverting statement of facts (Doc. 154) is **denied**.

4. The Court will set a final pretrial conference by separate order.

Dated this 20th day of June, 2011.

_____
David G. Campbell
United States District Judge