**WO**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kenneth Long, et al., | No. CV09-2209 PHX DGC |
| Plaintiffs, | **ORDER SETTING TRIAL** |
| vs. | |
| TRW Vehicle Safety Systems Incorporated, | |
| Defendant. | |

A Final Pretrial Conference was held on October 13, 2011.  Counsel appeared on behalf of Plaintiffs and Defendant.  On the basis of the parties' written submissions and the hearing,

**IT IS HEREBY ORDERED:**

1.      Trial in this matter shall begin on **April 10, 2012, at 9:00 a.m.**

2.      The trial shall last **6** days (April 10-13 and 17-18, 2012).  Plaintiffs shall be allotted **16.5** hours of trial time and Defendant shall be allotted **13.5** hours of trial time. The Court will keep track of each side's time.  Opening and closing statements, direct examination, and cross-examination will be counted against the parties' allotted time.

3.      A final conference shall be held on **March 29, 2012 at 3:00 p.m.** in Courtroom 603, Sandra Day O'Connor Federal Courthouse, 401 West Washington Street, Phoenix, Arizona 85003.  Out-of-state counsel may participate by telephone.

4.      The parties' proposed final pretrial order was approved by the Court as the final pretrial order in this case.  The order shall govern the presentation of evidence and other trial issues, and, pursuant to Rule 16(e) of the Federal Rules of Civil Procedure,

1    shall be modified only to prevent manifest injustice.   Evidence, objections, legal

2    arguments, and relief not requested or identified in the order shall not be available at trial,

3    except to prevent manifest injustice.

4          5.    The Court considered TRW's motion in limine number 1 to exclude or limit

5    the testimony of Gerald Rosenbluth.   Doc. 209.   Mr. Rosenbluth was initially retained by

6    Plaintiffs as a consulting expert on the basis of his 30 years of expertise in seat belt

7    operations and malfunctions.   He inspected the buckle worn by Ms. Johnson during the

8    accident, inserted and ejected the latch plate so he "could feel the action of the pawl and

9    the latch plate window" (Rosenbluth Depo., Doc. 220, Ex. 5, at 40-41), sought to mimic

10   the testing that would be done by auto manufacturers (*id*. at 41), used a digital caliper to

11   measure distances in the buckle to one "66,000th of an inch" (*id*. at 18), used a gauge to

12   measure the amount of tensile force required to release the buckle (*id*. at 19), and

13   photographed his testing.   For his work in this case, Mr. Rosenbluth has been paid more

14   than $10,000.   Plaintiffs nonetheless argue that Mr. Rosenbluth is a mere fact witness

15   who will testify at trial about his observations during the testing.

16         The Court concludes that Mr. Rosenbluth's expert examination of the buckle and

17   his testimonial description of his examination would constitute testimony based on

18   "scientific, technical, or other specialized knowledge" within the meaning of Rules

19   701(c) and 702.   As other courts have recognized, "[a] purported lay witness who will be

20   called upon to explain testing methodology and its applied results is serving as an expert,

21   whether he is called one or not, because he will be asked to draw inferences that the jury

22   would not be able to cull from its collective ordinary experiences." *Rogers v. Ingersoll-*

23   *Rand Co.*, 971 F.Supp. 4, 16 (D.D.C. 1997).   Because Mr. Rosenbluth's testimony would

24   be based on scientific, technical, or other specialized knowledge, he cannot testify under

25   Rule 701 (*see* Rule 701(c)) and cannot testify under Rule 702 without appropriate expert

26   disclosures.   He did not prepare an expert report as required by the Court's Case

27   Management Order (Doc. 28 at 2) and Rule 26(a)(2)(B), and therefore will not be

28   permitted to testify at trial.   The Court recognizes that this is a reversal of the Court's

prior ruling that Mr. Rosenbluth could testify about facts he observed without preparing an expert report (Doc. 71), but the Court at that time did not appreciate the highly technical nature of his testing or the fact that he had been retained and paid substantial sums as a consulting expert.  The motion in limine is **granted**.

6.     The Court considered TRW's motion in limine no. 2 to exclude or limit the testimony of H. Daniel Blackwood.  Doc. 210.  The Court's Case Management Order set a deadline for disclosure of rebuttal reports and stated that "[r]ebuttal experts shall be limited to responding to opinions stated by initial experts."  Doc. 28 at 2.  In response to TRW's motion, the Court has read the October 3, 2010 report of TRW's expert, James R. Youngjohn, and the October 19, 2010 report of Dr. Blackwood.  The Court concludes that Dr. Blackwood's report constitutes appropriate rebuttal testimony.  Both reports evaluate Sean McKnight's neuropsychological condition and specifically addressed the question of whether there are any lingering effects from the June 24, 2005 accident in which he was injured.  The doctors reach somewhat different conclusions, and explain the grounds for their conclusion.  Although Dr. Blackwood conducted some tests that were not conducted by Dr. Youngjohn, the Court concludes that Dr. Blackwood's report does respond to the opinions stated by Dr. Youngjohn.  TRW's motion will therefore be **denied**.

7.     The Court has considered TRW's motion in limine number 3 to exclude evidence of injuries to persons other than Plaintiffs.  Doc. 211.  Evidence that the two occupants ejected from the vehicle were more seriously injured than those who remained in the vehicle is relevant under Rule 401.  It tends to make more likely Plaintiffs' allegation that their severe injuries were caused by the alleged failure of the seatbelts and their resulting ejection from the vehicle.  The Court does not find that the probative value of this evidence is substantially outweighed by the risk of unfair prejudice.  The Court will make clear to the jury that the only claims asserted in this case are on behalf of the named Plaintiffs.  If requested, the Court will consider a limiting instruction which makes clear that evidence of the other occupants' injuries is relevant only in evaluating

1    Plaintiffs' claims as to the cause of their injuries.  Moreover, TRW will be permitted to
2    assert, as it has in briefing, that Cynthia Johnson and Sean McKnight would have been as
3    seriously injured even if they had remained in the vehicle.  The motion in limine is
4    **denied**.

5         8.    The Court has considered TRW's motion in limine number 4 to exclude
6    evidence of the recall of unrelated products and other purportedly similar incidents.
7    Doc. 212.  The motion will be **granted**.

8         Plaintiffs seek to present evidence of a 2001 recall of RNS 4G seatbelt buckles
9    that suffered from a partial engagement defect.  Plaintiffs acknowledge that the RNS 4G
10   buckle that Cynthia Johnson was using during the 2005 accident "was not part of that
11   recall population."  Doc. 236.  Plaintiffs' expert, Hassan El-Sabeh, found, on the basis of
12   photographs of Cynthia Johnson's seatbelt buckle, that the buckle "*appears* to duplicate a
13   condition that existed in the recall buckles."  Doc. 236 at 2 (emphasis added).  Plaintiffs
14   then argue that "[t]his evidence *suggests* that the defect identified in the RNS 4G buckle
15   recall campaign is not limited to the single year model RNS 4G buckles that were the
16   subject of the recall."  *Id*. (emphasis added).  Plaintiffs also seek to place in evidence
17   complaints received by the National Highway Transportation Safety Administration
18   ("NHTSA") from various consumers.  As reflected in Plaintiffs' response to the motion
19   in limine, Plaintiffs seek to introduce NHTSA documents that quote complaints made by
20   Ford owners concerning the unexpected release of their seatbelt latches.  Doc. 236 at 3
21   n. 5.  The documents appear to simply quote complaints received by consumers, rather
22   than set forth findings or analysis conducted by NHTSA.

23        A leading treatise addresses the admissibility of previous accidents or incidents in
24   a product liability case:

25            The requisite similarity and proximity [of the prior accidents] will
26        vary depending on what the evidence of the other accident is offered to
          prove.  If dangerousness is the issue, a high degree of similarity will be
27        essential, and the courts usually require the prior accident to be
          substantially similar to the one at issue.  The substantially similar standard
28

1
2
3
4
5

> is relaxed when the unrelated incidents are introduced for a purpose other than to prove that the product was unreasonably dangerous.  If the accident is offered to prove notice, a lack of exact similarity of conditions will not preclude admission provided the accident was of a kind which should have served to warn the defendant.  Usually evidence of similar incidents or accidents admissible to show dangerousness will also be admissible to show notice since notice requires a less rigorous standard of similarity.

6
7
8
9
10

2 J. Weinstein & M. Berger, *Weinstein's Federal Evidence* § 401.08[2] (Joseph M. McLaughlin, ed., Matthew Bender 2d ed. 2011) (hereinafter "*Weinstein's*").  The Ninth Circuit adopted this standard in *Pau v. Yosemite Park and Curry Co.,* 928 F.2d 880, 889 (9th Cir. 1991).

11
12
13
14
15
16
17
18
19
20
21
22

Plaintiffs have not shown that the defect in the recalled buckles was the same or substantially similar to the defect in Cynthia Johnson's buckle.  Plaintiffs' expert, Mr. El-Sabeh, does not identify the recall defect as the actual cause of Ms. Johnson's ejection from the vehicle.  *See* Depo. of El-Sabeh, Doc. 220, Ex. 1, at 65.  When asked if he could state to a reasonable degree of engineering probability that Ms. Johnson's buckle suffered from the same defect as the buckles in the 2001 recall, Mr. El-Sabeh said he could not. *Id.* at 66.  Mr. El-Sabeh was familiar with the root causes of the defect in the 2001 recall, but was not able to identify any of those root causes in Ms. Johnson's seatbelt.  *Id.* at 66-67.  Indeed, Mr. El-Sabeh was unable to identify the nature of the defect in Ms. Johnson's seatbelt buckle that caused her ejection.  *Id.* at 69.  Given this evidence, the Court concludes that Plaintiffs are unable to show that the defect in the 2001 recall was substantially similar to the defect in Ms. Johnson's seatbelt buckle.

23
24
25
26
27
28

In support of the admissibility of the 2001 recall evidence, Plaintiffs rely largely on the testimony of TRW's corporate representative, Charles Steffens.  Mr. Steffens was asked to look at various photographs of Cynthia Johnson's buckle and, on the basis of those photographs, state whether they appeared similar to conditions in the 2001 recall.  Although he acknowledged similarities in some of the photographs, Mr. Steffens did not opine that defects in the 2001 recall were present in Ms. Johnson's buckle.  The mere

similarities of photographs to the earlier defective product is not sufficient to show "high degree of similarity" needed for evidence of prior incidents to be admissible on the issue of dangerousness.  *Weinstein's* § 401.08[2].

It could be argued that Steffens' testimony shows some similarity and that the jury should therefore be allowed to evaluate the degree of similarity and whether the 2001 recall related to the same defect.  But in addition to the fact that substantial similarity is required for prior incidents to be admissible on dangerousness, and has not been shown to exist here, the Court concludes that the probative value of the 2001 recall evidence – which is somewhat marginal given the inability of Plaintiffs' expert to conclude that Ms. Johnson's buckle involved the same defect as the recall – would be substantially outweighed by the risk of unfair prejudice.  Unfair prejudice occurs when evidence leads a jury to make its decision on the basis of factors other than the merits of the case, commonly on the basis of emotion, but also on any other basis not justified by the evidence.  *Weinstein's* § 403.04[1][b].  Recalls are widely understood by the American public to mean that a product is defective in some respect.  A jury hearing about the 2001 recall of TRW seatbelt buckles due to partial engagement might jump to the conclusion that other TRW buckles suffer from the defect, even though evidence of a connection between the 2001 recall and the Johnson buckle is slight.  The Court sees a risk of unfair prejudice that substantially outweighs the marginal probative value of the recall evidence.

Although a lower standard is used to determine when evidence should be admitted to establish notice, the Court concludes that Plaintiffs cannot meet this lower standard either.  As noted, Plaintiffs' own expert cannot conclude that the defects in the 2001 recall were present in Ms. Johnson's buckle.  Moreover, the Court believes that the jury would be unable to distinguish between the use of such evidence for notice purposes and the use of such evidence to establish dangerousness, even with a limiting instruction. Thus, admission of the 2001 recall evidence on the question of notice would present a substantial risk of unfair prejudice to TRW on the question of dangerousness.  The Court therefore concludes that the evidence should not be admitted under Rule 403.

1    Plaintiffs make no attempt to show that the complaints received by NHTSA were
2    based on conditions similar to the 2001 recall or Ms. Johnson's buckle.  Plaintiffs argue
3    that the complaints are relevant because Mr. Steffens testified that there were no partial
4    engagement incidents between 2003 and 2006.  The complaints to NHTSA might be
5    relevant to rebut this testimony if Plaintiffs had evidence that the complaints reflected the
6    kind of partial engagement incidents that were the subject of the 2001 recall, but
7    Plaintiffs make no effort to analyze the problems at issue in the NHTSA complaints, and
8    Plaintiffs' expert testified that he made no efforts to verify the complaints or to determine
9    their causes.  *See* Depo. of El-Sabeh, Doc. 220, Ex. 1, at 36-39.

10    Plaintiffs argue that the NHTSA complaints satisfy the exception to the hearsay
11    rule found in Federal Rule of Evidence 803(8).  In support, Plaintiffs cite *Keith v. Volpe*,
12    858 F.2d 467, 481-82 (9th Cir. 1988).  The *Keith* decision, however, concerns statements
13    made by government agents in government reports, not verbatim quotations of
14    complaints from consumers.  The evidence identified by Plaintiffs, by contrast, simply
15    repeats consumer complaints.  Doc. 236 at 3 n. 45.  The fact that those statements are
16    quoted in a government report does not change the fact that they are hearsay.
17    "Statements by third persons that are recorded in an investigative report are hearsay
18    within hearsay.  As such, they are inadmissible unless they qualify for their own
19    exclusion or exception from the hearsay rule[.]"  *Weinstein's* § 803.10[4][a].  Thus, in
20    addition to the fact that the NHTSA complaints are not shown to be substantially similar
21    to either the 2001 recall or Ms. Johnson's buckle, the statements are hearsay.

22    9.    The Court addressed TRW's motion in limine number 5 to exclude 1996
23    marketing documents.  Doc. 213.  The motion concerns a memorandum written in March
24    of 1996 by Jim Chamberlin, a TRW automotive engineer and vice president of
25    technology.  In the memorandum, Chamberlin describes his recent review of various
26    information and states:  "I learned a lot (e.g., retractors <u>do</u> release multiple times in a
27    typical rollover)."  Doc. 223 at 2 (emphasis in original).  Attached to the memo is a
28    document modified by Chamberlin which states:  "Conventional retractors can, in fact,

1  experience intermittent release of webbing during rollovers." *Id*. at 3.  TRW seeks to
2  exclude these documents from evidence on several grounds.

3          First, TRW argues that the documents are not relevant because Plaintiffs cannot
4  show that the 3.5M retractor in this case is the same as the retractors addressed in the
5  1996 memorandum, nor that the 3.5M retractor even existed in 1996.  When TRW's
6  corporate representative, Charles Steffens, was asked about the Chamberlin statements,
7  however, he did not assert that they concerned different retractors.  Rather, he appeared
8  to acknowledge that the statements concerned retractors generally and that they disagreed
9  with Steffens' opinion that retractors do not release during rollovers.  *See* Doc. 150 at
10  179-80.  Moreover, the Chamberlin documents refer to "conventional retractors" and
11  contrast them with "pretensioner" retractors used largely in Europe.  TRW does not argue
12  that the vehicle in this case included pretensioner retractors.  The Court concludes that
13  the 1996 documents satisfy the relevancy standard of Rule 401.  They have a tendency to
14  make the existence of a fact in dispute – whether retractors release during rollovers –
15  more probable than it would be without the evidence.  The Court therefore cannot
16  exclude the evidence on relevancy grounds.  TRW's arguments concerning possible
17  differences between the subjects addressed in the 1996 document and the retractors at
18  issue in this case go to the weight, not the relevancy, of the documents.[1]

19          Second, TRW argues that the Chamberlin's statements are hearsay.  This
20  argument is not based on any assertion that the 1996 documents were not generated at
21  TRW or by a TRW vice president.  TRW appears to concede that the documents are
22  authentic and were in fact generated as part of TRW's business by a vice president.
23  Rather, TRW argues that the statements quoted above reflect information Chamberlin
24  learned during a "blitz" of various technical papers.  Even if this is true, the statements
25  are made by Chamberlin, reflect what he learned (they do not purport to quote what he

26  _____

27          [1] The Court notes that this relevancy inquiry under Rule 401 applies a different
    standard that the prior incidents standard that applies to the 2001 recall evidence and
28  requires a showing of substantial similarity.

read from others), and satisfy the requirements of Rule 801(d)(2)(D) – they are statements by a TRW vice president concerning a matter within the scope of his employment made during the existence of the employment relationship. Chamberlin's statements thus constitute an admission of a party opponent and no valid hearsay objection has been raised.

Third, TRW argues that Chamberlin's assertions constitute expert testimony and are inadmissible because Chamberlin has not been designated as an expert. The Court cannot conclude, however, that Chamberlin's statements in the 1996 documents were based on his "scientific, technical, or other specialized knowledge" within the meaning of Rule 702. Chamberlin does not purport to convey his studied expert opinion, but instead to recount what he has learned through his recent reading. TRW has cited no authority that Rule 702 applies to such a recital by a party opponent. Moreover, TRW undoubtedly will argue, and will be free to argue, that Chamberlin's statement was not based on his expertise or testing, and instead reflected nothing more than his recent "blitz" of literature in the field.

Finally, TRW argues that the 1996 documents should be excluded under Rule 403 because the risk of unfair prejudice will substantially outweigh their probative value. The Court does not agree. As noted above, TRW will be free to provide the jury with information concerning the context within which the 1996 documents were created and the information upon which they were based. TRW can also argue, if supported by the evidence, that the 1996 documents do not address the retractors at issue in this case. With this information in hand, the jury will be able to assess the reliability of the 1996 documents without a substantial risk of unfair prejudice to TRW. The motion in limine is **denied**.

10. The Court has considered TRW's motion in limine number 6 to bifurcate the trial between liability and damages. Doc. 214. The motion will be **denied**. There appears to be significant overlap between the damages evidence and the liability evidence in this case. The Court is not persuaded that bifurcation would be workable, nor that it

1    would result in significant time savings.

2        11.    The Court has considered TRW's motion in limine number 7 to exclude

3    inflammatory photographs.   Doc. 215.   The motion will be **granted**, but without

4    prejudice to Plaintiffs raising the issue again outside the hearing of the jury during trial.

5    There is no dispute in this case that Ms. Johnson died as a result of the accident.  Nor is

6    there any dispute regarding the nature of Sean McKnight's physical injuries.  Plaintiffs

7    have failed to persuade the Court that the photographs would shed any light on the

8    question of whether Ms. Johnson was wearing a seatbelt at the time of the accident, or on

9    the issue of whether or not Ms. Johnson and Sean McKnight would have suffered serious

10   injuries had they remained in the vehicle.  Thus, it appears to the Court that the probative

11   value of the photographs is slight.   Because the photographs would have a strong

12   emotional impact on the jury, the Court concludes that the risk of unfair prejudice

13   substantially outweighs their slight probative value.   If Plaintiffs conclude that the

14   photographs become particularly relevant during the course of the trial, they can ask the

15   Court to reconsider this issue outside the hearing of the jury.  The photographs should not

16   be mentioned or shown to the jury absent a Court order.

17       12.    The Court has considered TRW's motion in limine number 8 to exclude

18   any comment or testimony improperly referencing its counsel.  Doc. 216.  The motion is

19   an effort to "pre-try" the case – to anticipate issues that may not arise at trial.  The Court

20   does not view this as a proper use of motions in limine and therefore will **deny** the

21   motion.  The Court is confident that counsel on both sides will follow the Court's Rules

22   of Trial Conduct and Decorum.  Plaintiffs' counsel has made clear that they intend to

23   make no comment regarding the size, location, or clientele of TRW's counsel.  Evidence

24   of prior incidents is addressed in other rulings.  Evidence of TRW's wealth will be

25   considered in connection with any punitive damages arguments, but should not be

26   mentioned to the jury without first obtaining the Court's permission.

27       13.    The Court has considered TRW's motion in limine number 9 to exclude

28   evidence and testimony regarding Arizona statutes or laws regarding booster seats.

Doc. 217.   The motion will be **granted**.   Plaintiffs seek to introduce evidence of A.R.S. § 28-907(A), which provides that "a person shall not operate a motor vehicle on the highways of this state when transporting a child who is under five years of age unless that child is properly secured in a child passenger restraint system."   Plaintiffs argue that this statute is relevant to the appropriate standard of care, and therefore to the fact that Sean McKnight was not using a booster seat at the time of the accident.   TRW argues that given Sean McKnight's age (6) and size, both the owner's manual and the warning on the seat belt in the Ford Expedition stated that Sean McKnight should be in a booster seat. The Court concludes that evidence of the statute is inadmissible for several reasons.

First, although not noted by the parties, the statute itself provides that it is not admissible:  "The requirements of this section or evidence of a violation of this section are not admissible as evidence in a judicial proceeding except in a judicial proceeding for a violation of this section."  A.R.S. § 28-907(F).

Second, before a court adopts a statute as the relevant standard of care, it must first determine "that the statute's purpose is in part to protect a class of persons that includes the plaintiff and the specific interest at issue from the type of harm that occurred and against the particular action that caused the harm."  *Tellez v. Sabin,* 933 P.2d 1233, 1237 (Ariz. Ct. App. 1996).  Section 28-907(A) concerns children under the age of five and the requirement that they be placed in "a child passenger restraint system."  It says nothing about children over the age of five, and nothing about the use of booster seats.  Because the Court cannot conclude that the statute's purpose is to protect Sean McKnight and people of his age and size, the Court cannot conclude that it sets an appropriate standard of care that should be shared with the jury.

Third, the fact that Sean McKnight was over the age of five does not mean that Arizona law did not require suitable protections.  A.R.S. § 28-909(B) states that the operator of a motor vehicle "shall require each passenger under 16 years of age" to either have a lap and shoulder belt "properly adjusted and fastened while the vehicle is in motion," or a lap belt "properly adjusted and fastened while the vehicle is in motion."

1    This statute establishes a duty to protect individuals under 16 years of age.  It does not

2    define "properly adjusted and fastened," and the Court cannot exclude the possibility that

3    such proper adjustment and fastening may require a booster seat.  Thus, the Court cannot

4    say that Arizona law states that children over the age of five years need not be placed in a

5    booster seat, and use of A.R.S. § 28-907(A) to suggest otherwise would not be accurate.

6           Because A.R.S. § 28-907(A) does not establish an applicable standard of care, and

7    by its terms is inadmissible in this case, the Court concludes that it is not relevant under

8    Rule 401.   Given the complexities of Arizona law, the Court also concludes that

9    introduction of the statute would create a substantial risk of jury confusion and

10   prolonging of the trial under Rule 403.

11          14.    The Court has considered TRW's motion in limine number 10 to exclude

12   references to the papers of David Renfroe and Stephen Meyer.  Doc. 218.  The motion

13   will be **granted**.

14          TRW asserts that the Meyer paper was not included in the report of Plaintiffs'

15   expert, Mr. El-Sabeh.   Plaintiffs do not dispute this assertion, and it appears to be

16   confirmed by Mr. El-Sabeh's deposition.  *See* Depo. of El-Sabeh, Doc. 220, Ex. 1, at 156.

17   Rule 26(a)(2)(B)(ii) and (iii) provide that the written report provided by an expert must

18   include all "facts or data considered by the witness in forming" his opinions and "any

19   exhibits that will be used to summarize or support" the opinions.   The Court's Case

20   Management Order required Plaintiffs to produce "full and complete expert disclosures"

21   as required by this rule by the deadline set in the Court's order.  Doc. 28 at 2-3.  The Case

22   Management Order further provided that "absent truly extraordinary circumstances,

23   parties will not be permitted to supplement their expert reports after these dates."  *Id*.

24   Because the Meyer report was not included in El-Sabeh's expert report, and the failure

25   has not been justified by extraordinary circumstances, it was untimely disclosed and is

26   not admissible.

27          Even though the Renfroe paper was cited in the El-Sabeh rebuttal report, the Court

28   concludes that the motion in limine should be granted.  Federal Rule of Evidence 703

1    provides that "[f]acts or data that are otherwise inadmissible shall not be disclosed to the

2    jury by the proponent of the opinion or inference unless the court determines that their

3    probative value in assisting the jury to evaluate the expert's opinion substantially

4    outweighs their prejudicial effect."  This rule "provides a presumption against disclosure

5    to the jury of information used as the basis of an expert's opinion and not admissible for

6    any substantive purpose, when that information is offered by the proponent of the

7    expert."  *Weinstein's* § 703.05[2] (quoting Advisory Committee Note).  Thus, "Rule 703

8    is not, itself, an exception to or exclusion from the hearsay rule or any other evidence rule

9    that makes the underlying information inadmissible."  *Id.*

10         Plaintiffs do not dispute that the Renfroe paper constitutes hearsay.  Because it is

11   hearsay, and because Rule 703 establishes a presumption against disclosing such

12   inadmissible information to the jury, the motion in limine will be granted.  If Plaintiffs

13   believe during the course of trial that disclosure of the Renfroe paper would be

14   particularly necessary for the jury to evaluate Mr. El-Sabeh's opinion, they may raise that

15   issue with the Court outside the hearing of the jury.[2]

16         15.    The Court has considered TRW's motion in limine number 11 to exclude

17   from Mr. El-Sabeh's testimony all photographs taken and testing performed by Gerald

18   Rosenbluth.  Doc. 219.  This issue also is governed by Rule 703.  Under the first two

19   sentences of that rule, Mr. El-Sabeh can use the photographs in forming his opinion if

20   they are "of a type reasonably relied upon by experts in the particular field in forming

21   opinions."  The fact that Mr. El-Sabeh can rely on the photographs and testing for this

22   purpose, however, does not mean that they become admissible.  The second sentence of

_____

24   [2] At a minimum, as *Weinstein's* § 703.05[2] notes, disclosure of the Renfroe paper
     likely would require a limiting instruction that the jury cannot consider the paper as
25   substantive evidence, but merely in understanding and evaluating Mr. El-Sabeh's
     opinions.  The Court also notes that "it is improper for an expert to testify about opinions
26   of other, non-testifying experts."  *Id.*  Thus, if any evidence of the Renfroe paper were to
     be admitted, it would only be evidence concerning Mr. El-Sabeh's reliance on the paper
27   necessary for the jury to evaluate Mr. El-Sabeh's opinions.

1   Rule 703 states that the photographs need not be admissible for Mr. El-Sabeh's opinions

2   to be admissible, but not that the photographs themselves become admissible.  Rather,

3   whether the photographs can be shown to the jury depends on the third sentence of

4   Rule 703:  "Facts or data that were otherwise inadmissible shall not be disclosed to the

5   jury by the proponent of the opinion or inference unless the court determines that their

6   probative value in assisting the jury to evaluate the expert's opinion substantially

7   outweighs their prejudicial effect."   As discussed above, this sentence creates a

8   presumption against the admission of otherwise inadmissible evidence relied upon by an

9   expert.

10          The Court cannot determine at this point whether the photographs taken by

11  Mr. Rosenbluth are of a type reasonably relied upon by experts such as Mr. El-Sabeh, and

12  therefore whether they can form a basis for his opinions.  Nor can the Court conclude at

13  this stage that the photographs should be shown to the jury in order to assist it in

14  evaluating Mr. El-Sabeh's opinions, although the Court is doubtful that they can be used

15  for this purpose given the fact that Mr. El-Sabeh included his own photographs.  Whether

16  showing the Rosenbluth photographs is necessary, and whether any probative value of

17  the photographs would be substantially outweighed by potential unfair prejudice, must be

18  determined in the context of Mr. El-Sabeh's testimony.  Plaintiffs should not show or

19  mention the photographs to the jury until after this issue has been resolved by the Court.

20  The motion will be **denied**.

21          16.     The Court considered Plaintiff's motion in limine number 1 regarding the

22  collateral source rule.[3]  Doc. 167.  Plaintiffs ask the Court to exclude various sources of

23  collateral recovery from the evidence at trial.   TRW's response does not address the

24  merits of Plaintiffs' argument, but instead asserts that the motion is insufficiently specific

25  _____

26          [3] The Court notes that Plaintiffs' motions in limine do not comply with the Court's
    local rules requiring 13 point type in text and footnotes.  Nor do they comply with the
27  Court's requirement that motions in limine specifically set forth the language to be
    included in an order in limine.  Finally, the Court notes that it finds briefs difficult to read
28  when all citations are in footnotes.

1    and therefore should be denied.

2         In Arizona, the collateral source rule provides that payments made to or benefits

3    conferred on the injured party from other sources should not be credited against the

4    tortfeasor's liability even though they may cover all or part of the harm for which the

5    tortfeasor is responsible.  *Taylor v. Southern Pacific Transportation Co.*, 637 P.2d 726,

6    729 (Ariz. 1981).  The rule states that "total or partial compensation for an injury which

7    the injured party receives from a collateral source wholly independent of the wrongdoer

8    does not operate to reduce the damages recoverable from the wrongdoer."  *Hall v.*

9    *Olague*, 579 P.2d 577, 579 (Ariz. Ct. App. 1978).  The rule is intended to be somewhat

10   punitive toward tortfeasors – it "allows a plaintiff to fully recover from a defendant for an

11   injury even when the plaintiff has recovered from a source other than the defendant for

12   the same injury."  *Norwest Bank (Minnesota), N.A. v. Symington*, 3 P.3d 1101, 1109

13   (Ariz. Ct. App. 2000).

14        The Court concludes that the collateral source rule will bar from the trial in this

15   case any evidence of benefits received from insurance coverage, services furnished

16   without charge, Social Security or pensions, worker's compensation benefits, Medicaid

17   or Medicare benefits, and any other governmental or charitable benefits.  The motion will

18   be **granted** with respect to these collateral sources.  The Court will address in the next

19   motion whether the rule applies to recoveries from prior litigation.

20        17.    The Court has considered Plaintiffs' motion in limine number 2 regarding

21   unrelated prior claims or lawsuits.  Doc. 194.  Plaintiffs ask the Court to preclude TRW

22   from making any reference to the fact that Plaintiffs have made other claims, suits, or

23   settlements with other tortfeasors.  Plaintiffs argue that this evidence is excluded by the

24   collateral source rule.

25        TRW responds by noting that Arizona has not excluded such evidence under the

26   collateral source rule.  *See Riexinger v. Ashton Co.,* 453 P.2d 235, 237 (Ariz. Ct. App.

27   1969).  The Arizona Court of Appeals held in *Riexinger* that a tortfeasor's liability should

28   be reduced by amounts paid in settlement by other tortfeasors.  As TRW acknowledges,

however, *Riexinger* was decided before Arizona adopted a comparative fault statute. Thus, its current accuracy is in some doubt.

TRW argues that settlement amounts received from other tortfeasors are routinely admitted at trial. But every case cited by TRW found that evidence of another lawsuit was admissible for another purpose – to challenge the credibility of a witness, to establish a relationship among the parties, or for similar purposes. None of TRW's cases holds that evidence of settlements with another tortfeasor is admissible for the jury's consideration in assessing the Defendant's fault or liability.

Plaintiffs' cases are also inapposite. They concern the collateral source rule as applied to insurance or similar recoveries. None of them applies to settlements received from another tortfeasor.

Plaintiffs have not carried their burden of showing that the Court should grant the motion in limine. The motion will therefore be **denied**. But neither is the Court persuaded that amounts the Plaintiffs received in settlement from Ford or Continental will be admissible at trial. Plaintiffs appear to concede that their recovery might be reduced by the amount of the other settlements (Doc. 184 at 2), but seem to suggest that this is the function of the Court, not the jury. TRW should not mention the settlements before the jury without raising the issue with the Court.

18.    The Court has considered Plaintiffs' motion in limine number 3 regarding unrelated accidents or injuries. Doc. 195. The motion seeks to exclude references to unrelated accidents or injuries "which are wholly disassociated from and do not relate to or serve as the sole cause defense to plaintiffs' present claims." *Id.* at 2. Plaintiffs do not identify any particular evidence, nor do they explain why the evidence is wholly disassociated from the issues in this case. In effect, Plaintiffs are making a relevancy argument without reference to the evidence they ask the Court to deem irrelevant. The Court cannot grant such a vague and unsupported motion. The motion is **denied**.

19.    The Court has considered Plaintiffs' motion in limine number 4 regarding the effects of a claim, suit, or judgment upon insurance rates, premiums, or charges.

1    Doc. 196.   The Court cannot rule on such a generalized request.   Plaintiffs may make

2    relevancy objections at trial.   The motion is **denied**.

3         20.     The Court has considered Plaintiffs' motion in limine number 5 regarding

4    damage awards.   Doc. 197.   The motion asks the Court to preclude Plaintiffs from

5    suggesting to the jury that damage awards may drive up the price of products, put the

6    manufacturers out of business, or cause job losses.   TRW does not respond to the

7    substance of the motion. Doc. 261.   The Court agrees that any such suggestions would be

8    irrelevant and inadmissible.   The motion is **granted**.

9         21.     The Court has considered Plaintiffs' motion in limine number 6 regarding

10   an award of damages.   Doc. 198.   The motion asks the Court to preclude TRW from

11   discussing what Plaintiffs might do with any award of damages received in this case.   As

12   TRW notes in response, such a broad request arguably could prevent TRW from

13   inquiring into Plaintiffs' damages claims, including their claim for future damages.

14   Because the motion is imprecise and not related to any specific item of evidence, it will

15   be **denied**.   Plaintiffs may object on relevancy grounds at trial.

16        22.     The Court has considered Plaintiffs' motion in limine number 7 regarding

17   Plaintiffs' employment of their attorneys and any contingent fee arrangement.   Doc. 168.

18   Plaintiffs ask the Court to preclude TRW from mentioning the circumstances under

19   which Plaintiffs employed their attorneys or the contingent fee arrangement between

20   Plaintiffs and their counsel.   TRW responds by noting that some aspects of the attorney-

21   client relationship may become relevant, such as the time at which counsel was retained

22   (as it might relate to preservation of evidence or emotional distress claims).   Financial

23   arrangements might also become relevant with respect to amounts paid to expert

24   witnesses.   Although the Court agrees that Plaintiffs' contingent fee relationship with

25   their attorneys is clearly irrelevant, other aspects of the attorney-client relationship

26   arguably could become relevant at trial.   As a result, the motion will be **denied**.   Plaintiffs

27   may make relevancy objections at trial.

28        23.     The Court has considered Plaintiffs' motion in limine number 8 regarding

taxation of damages awards.  Doc. 193.  The motion asks the Court to preclude TRW from making any reference to the fact that a recovery by Plaintiffs would or would not be subject to taxation.  TRW does not respond to the substance of the motion.  The tax consequences of a damages award generally are not admissible at trial.  *See Sealy v. McEvers*, 564 P.2d 394, 397 (Ariz. Ct. App. 1977) ("We adopt the majority rule and hold that . . . evidence of income taxes or deductions should not be allowed for the purpose of reducing the amount of damages.").  TRW does not respond to the substance of this motion.  Doc. 261.  The motion will be **granted**.

24.     The Court has considered Plaintiffs' motion in limine number 9 regarding *ex parte* statements or reports.  Doc. 189.  The motion asks the Court to preclude TRW from making "any reference or suggestion as to the contents of, or tender or, any *ex parte* statement or report of any person not then and there present in court to testify and to be cross-examined."  *Id.* at 2.  The Court does not know what evidence Plaintiffs are referring to in this motion.  The motion will be **denied**.

25.     The Court has considered Plaintiffs' motion in limine number 10 regarding probable testimony of a witness not called to testify.  Doc. 169.  This is an attempt to pre-try the case.  Plaintiffs can make relevancy objections at trial.  The motion is **denied**.

26.     The Court has considered Plaintiffs' motion in limine number 11 regarding counsels' personal beliefs concerning credibility of any witness or the merits of Plaintiffs' claims.  Doc. 170.  This is another attempt to pre-try the case.  Plaintiffs need not ask the Court, by motions in limine, to enforce the rules of evidence or other procedural rules applicable to civil trials.  The motion is **denied**.

27.     The Court has considered Plaintiffs' motion in limine number 12 regarding the existence of contents of documents not previously disclosed or produced in discovery.  Doc. 171.  No document is identified.  This is yet another attempt to pre-try the case.  Plaintiffs can make appropriate objects at trial.  The motion is **denied**.

28.     The Court has considered Plaintiffs' motion in limine number 13 regarding testimony of undisclosed witnesses.  Doc. 172.  Another attempt to pre-try the case.

Plaintiffs may make appropriate objections at trial.  The motion is **denied**.

29.    The Court has considered Plaintiffs' motion in limine number 14 regarding requests for matters found or contained in Plaintiffs or their counsels' files.  Doc. 199.  Yet another attempt to pre-try the case.  Plaintiffs may make appropriate objections at trial.  The motion is **denied**.

30.    The Court has considered Plaintiffs' motion in limine number 15 regarding prior moving traffic violations or automobile collisions.  Doc. 173.  The motion asks the Court to preclude TRW from making any reference to prior moving traffic violations or any prior automobile collisions that Plaintiffs, Cynthia Jo Johnson, or Phillip McKnight may have had in the past.  This is another attempt to pre-try the case.  Plaintiffs may make appropriate objections at trial.  The motion is **denied**.

31.    The Court has considered Plaintiffs' motion in limine number 16 regarding references as to when this lawsuit was filed.  Doc. 174.  This is another attempt to pre-try the case.  Plaintiffs may make appropriate objections at trial.  The motion is **denied**.

32.    The Court has considered Plaintiffs' motion in limine number 17 regarding defendant corporation.  Doc. 175.  This is another effort to pre-try the case.  The Court will rule on objections to inappropriate arguments at trial.  The motion is **denied**.

33.    The Court has considered Plaintiffs' motion in limine number 18 regarding references to motions in limine being ruled upon by the Court.  Doc. 176.  This is another attempt to pre-try the case.  The Court trusts that all counsel will refrain from making inappropriate statements or arguments in front of the jury.  The motion is **denied**.

34.    The Court has considered Plaintiffs' motion in limine number 19 regarding references to settlement negotiations.  Doc. 177.  This is an effort to pre-try the case.  All counsel understand the meaning of Rule 408.  The motion is **denied**.

35.    The Court has considered Plaintiffs' motion in limine number 20 regarding impermissible objections.  Doc. 178.  This is an effort to pre-try the case.  The motion is **denied**.

36.    The Court has considered Plaintiffs' motion in limine number 21 regarding

vehicles currently owned and/or driven by Plaintiffs.  Doc. 179.  This is yet another attempt to pre-try the case.  The motion is **denied**.

37.   The Court has considered Plaintiffs' motion in limine number 22 regarding statistics.  Doc. 180.  Yet another attempt to pre-try the case.  The motion is **denied**.

38.   The Court has considered Plaintiffs' motion in limine number 23 regarding derogatory remarks.   Doc. 181.   This is another unnecessary motion.   All counsel understand that derogatory remarks have no place at trial.  The motion is **denied**.

39.   The Court has considered Plaintiffs' motion in limine number 24 regarding criminal history.  Doc. 182.  The motion asks the Court to preclude TRW from making any reference to the criminal history of Plaintiffs or Cynthia Jo Johnson.  TRW does not respond to the substance of the motion.  Doc. 261.  The motion is **granted**.

40.   The Court has considered Plaintiffs' motion in limine number 25 regarding police report. Doc. 183.  Plaintiffs ask the Court to preclude TRW from making any reference to any facts or opinions "other than the police officer's personal observations," such as the cause of the rollover or opinions as to whether Cynthia Jo Johnson was wearing her seatbelt.  *Id*. at 1-2.  The Court cannot tell from the motion whether it is focused on admission of the police report or admission of a police officer's testimony. Nor have Plaintiffs provided the Court with a copy of the report or identified the specific portions they deem inadmissible.  Plaintiffs have thus failed to carry their burden on a motion in limine, and the motion will be **denied**.

Because it appears that police officer opinions may become an issue at trial, the Court provides the following guidance.  Rule 803(8) makes clear that matters observed by police pursuant to their investigative duties, and factual findings included in a police report, are admissible unless the factual findings are deemed untrustworthy.   The Supreme Court has explained that portions of investigatory reports otherwise admissible under Rule 803(8) are not inadmissible merely because they state a conclusion or opinion.  Conclusions that are based on a factual investigation and that satisfy the Rule's trustworthiness requirement may be admitted along with other portions of the report.

*Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 170 (1988) (conclusions of JAG report about causes of Navy airplane accident were properly admitted).   Thus, if the police report at issue in this case contains conclusions about the cause of the accident or any other fact related to the accident, and the conclusions are not shown to be untrustworthy, the conclusions may be admitted under Rule 803(8)(C).

Statements made by third persons that are recorded in an investigative report are hearsay.   The statements are inadmissible unless they qualify for their own exclusion or exception to the hearsay rule.   *Weinstein's* § 803.10[4][a].

Police officers may give lay opinions under Rule 701, provided those opinions are rationally based on the perception of the officer, helpful to a clear understanding of the officer's testimony or determination of a fact in issue, and not based on scientific, technical or otherwise specialized knowledge.   Fed. R. Ev. 701.   An officer's testimony under Rule 701 is not limited to mere factual assertions.   Opinions that satisfy the rule may also be given.

A police officer may also testify under Rule 702 if the requirements of that rule are satisfied.   Such expert testimony will be permitted, however, only if the police officer was disclosed under Rule 26(a)(2)(A).   *See* Case Management Order, Doc. 28, ¶ 5(e). Such testimony will be limited to opinions formed by the officer during the course of the investigation.   If the officer is asked to provide opinions not formed as a result of his involvement in the case, a Rule 26(a)(2)(B) report must have been disclosed.   *Id*.

The Court will follow these principles in ruling on evidence and objections at trial.

41.     The Court has considered Plaintiffs' motion in limine number 26 regarding prior lawsuits.   Doc. 200.   The motion asks the Court to preclude TRW from making any reference to Plaintiffs' prior lawsuits against Ford Motor Company, Continental Tire North America, or another TRW entity.

Plaintiffs argue that the evidence is irrelevant because Defendant has not and cannot present sufficient evidence to prove a viable products liability or negligence claim against Ford or Continental.   This argument is, in effect, a motion for summary judgment.

Because Plaintiffs did not file a motion for summary judgment on this issue, their current argument is untimely.

TRW argues that it can establish the fault of Ford and Continental through Plaintiffs' own pleadings in the other lawsuits.  TRW argues that such pleadings constitute judicial admissions binding on Plaintiffs.  Because Plaintiffs' motion is not directed at their pleadings from other cases and does not address the judicial admissions argument, and because TRW did not file a motion in limine seeking advance approval concerning the admissibility of prior pleadings, the Court need not rule on the issue at this time.

Plaintiffs also argue that any evidence of the prior lawsuits would necessarily pertain to collateral source benefits and should therefore be precluded.  As noted above, the Court is not persuaded at this point that the collateral source rule applies to recoveries from other lawsuits.

In short, Plaintiffs have provided no basis for granting the motion in limine.  The motion will be **denied**.

42.    The Court has considered Plaintiffs' motion in limine number 27 regarding prior settlements.  Doc. 184.  Like its motion in limine number 2, this motion asks the Court to preclude TRW from making any reference to prior settlements with Ford, Continental, or GEICO.  Plaintiffs note that this motion would not limit Defendant from arguing to the Court that it should receive credit for a prior settlement.  *Id.* at 2.

TRW argues that the prior settlements may become admissible for various purposes during the course of trial, such as proving the bias or prejudice of a witness or showing relationships between the parties.  TRW asserts that the evidence may also be admissible to rebut certain damages claims.

For reasons explained above with respect to motion in limine number 2, the Court cannot at this point determine whether evidence of the prior settlements will be admissible at trial.  The Court must make that decision in the context of trial.  The motion is **denied**.  TRW should not mention the settlements to the jury without first raising the

1    issue with the Court.

2        43.    The Court has considered Plaintiffs' motion in limine number 28 regarding

3    Kenneth Long's statement about his allocation of fault to Phillip McKnight.  Doc. 185.

4    Plaintiffs ask the Court to preclude TRW from mentioning the fact that Kenneth Long

5    made statements regarding Phillip McKnight's fault in the rollover.  Plaintiffs argue that

6    this testimony is irrelevant and inadmissible under Rule 402, unduly prejudicial under

7    Rule 403, and improper lay opinion testimony under Rule 701.

8        TRW responds by asserting that Kenneth Long's statements are admissions of a

9    party opponent under Rule 801(d)(2) and that such admissions are generously admitted in

10   evidence.  Doc. 248 at 4.  TRW quotes a 1972 Advisory Committee Note suggesting that

11   such statements are not governed by opinion rules.

12       The Court does not find that Kenneth Long's statements regarding the fault of

13   Phillip McKnight are based on scientific, technical, or other specialized knowledge

14   within the meaning of Rules 701(c) or 702 and therefore inadmissible under those rules.

15   The statements may be relevant on the general question of causation, and the Court

16   cannot conclude that this stage that they would be unfairly prejudicial under Rule 403.

17   The motion will therefore be **denied**.

18       44.    The Court has considered Plaintiffs' motion in limine number 29 regarding

19   a notation in Jo Ellen Butler's records.  Doc. 186.  The motion asks the Court to preclude

20   TRW from mentioning a note in counseling records reading "belted?"  TRW responds

21   that there is no such reference in Ms. Butler's records.  Plaintiffs have not provided the

22   record in question or the deposition testimony related to it.  As a result, the Court cannot

23   grant Plaintiffs' motion.  The motion is **denied**.  TRW should not mention this evidence

24   to the jury without first raising the issue with the Court.

25       45.    The Court has considered Plaintiffs' motion in limine number 30 regarding

26   past familial issues.  Doc. 187.  Plaintiffs ask the court to preclude TRW from making

27   any reference to reasons for the divorces of Cynthia Jo Johnson from the fathers of

28   Cherish Rogers and Christopher Johnson.   TRW responds that Plaintiffs have made

claims for emotional damages, and that other stressors in Plaintiffs' lives may be relevant to the claims. The Court cannot determine at this time that the evidence would be inadmissible or unfairly prejudicial. The Court must make this determination at trial. As a result, the motion in limine is **denied**. TRW should not mention this evidence to the jury without first raising the issue with the Court.

46. The Court has considered Plaintiffs' motion in limine number 31 regarding Cherish Rogers. Doc. 188. The motion asks the Court to preclude TRW from referring to the fact that Cherish Rogers was pregnant, miscarried, or was living with her boyfriend. TRW notes again that Plaintiffs have made claims for emotional damages and that all stressors in their lives may therefore be relevant. Doc. 249. The Court cannot determine at this time that the evidence will be irrelevant or unfairly prejudicial. The Court must rule on relevancy and prejudice at trial. The motion is **denied**. TRW should not mention this evidence to the jury without first raising the issue with the Court.

47. The Court has considered Plaintiffs' motion in limine number 32 regarding application of the consumer expectation test. Doc. 201. Plaintiffs ask the Court to hold that the appropriate legal test for the product liability claim in this case is the consumer expectation test. TRW disagrees, arguing that the Court should adopt a risk-benefit test.

The Court has already decided this issue. For reasons explained in its earlier ruling (Doc. 162 at 4-8), the Court concludes that the consumer expectation test is appropriate for this case. The motion is **granted**.

48. The Court has considered Plaintiffs' motion in limine number 33 regarding allocation of fault to Continental Tire and Ford Motor Company. Doc. 190. Plaintiffs ask the Court to preclude TRW from seeking to apportion fault to these other alleged tortfeasors because TRW has no evidence to support such an allocation. This is an untimely motion for summary judgment. Plaintiffs also argue that TRW failed to comply with the notice requirements found in Arizona Rule of Civil Procedure 26(b)(5). TRW agreed at the Final Pretrial Conference that it failed to comply with Rule 26(b)(5). TRW argues that such a failure can be excused because Plaintiffs were well aware of the

1    potential culpability of Ford and Continental and no notice of non-party at fault was

2    needed to apprise them of such fault.

3         Neither party, it appears, has read the Arizona comparative fault statute with care.

4    The statute provides that "[n]egligence or fault of a nonparty may be considered *if the*

5    *plaintiff entered into a settlement agreement with the nonparty* **or** if the defending party

6    gives notice before trial, in accordance with requirements established by court rule, that a

7    nonparty was wholly or partially at fault." A.R.S. § 12-2506(B) (emphasis added).  The

8    statute makes clear that fault may be apportioned to non-parties with whom Plaintiffs

9    have reached settlements "or" non-parties identified in a notice of non-party at fault.

10   Plaintiffs have reached settlements with Ford and Continental.  Fault may therefore be

11   apportioned to them under the statute without regard to whether notice was given under

12   Rule 26(b)(5).  The motion will therefore be **denied**.

13       49.   The Court has considered Plaintiffs' motion in limine number 34 regarding

14   allocation of fault to Phillip McKnight.  Doc. 191.  Plaintiffs assert that TRW failed to

15   identify Mr. McKnight in an appropriate notice under Arizona Rule of Civil Procedure

16   26(b)(5).  TRW does not dispute this fact.  Doc. 248.  The parties do not suggest that

17   Plaintiffs have entered into a settlement with Mr. McKnight.  As a result, the notice

18   provision of Rule 26(b)(5) applies.

19       Arizona's comparative fault statute permits a defendant to assert a non-settling

20   non-party's fault at trial only "if the defending party gives notice before trial, in

21   accordance with requirements established by court rule, that a nonparty was wholly or

22   partially at fault."  A.R.S. § 12-2506(B).  Rule 26(b)(5) in turn sets a deadline for

23   defendants to identify non-parties at fault, and provides that "[t]he trier of fact shall not

24   be permitted to allocate or apportion any percentage of fault to any nonparty whose

25   identity is not disclosed in accordance with the requirements of this subpart 5 except

26   upon written agreement of the parties or upon motion establishing good cause, reasonable

27   diligence, and lack of unfair prejudice to other parties."

28       The parties have not agreed in writing that TRW may assert the non-party fault of

Mr. McKnight at trial.  And TRW has not shown that its failure to comply with the Rule 26(b)(5) deadline was justified by good cause or that it exercised reasonable diligence in seeking to comply with the rule.  TRW does not argue that it was unaware of the comparative fault of Mr. McKnight, or that it otherwise was precluded in some way from complying with the clear notice requirement.

Arizona courts apply the statutory and rule requirements strictly.  As the Arizona Court of Appeals has explained:  "Rule 26(b)(5) directs that '[t]he trier of fact shall not be permitted to allocate or apportion any percentage of fault to any nonparty' not identified in accordance with the Rule.  Because Appellants did not comply with the Rule, the statute and Rule bar consideration of any nonparty's fault in the allocation of damages, and neither gives the trial court discretion to fashion another sanction." *Scottsdale Inc. Co. v. Cendejas*, 205 P.2d 1128, 1135 (Ariz. Ct. App. 2009).

Federal cases in this district routinely apply the notice requirement of Rule 26(b)(5) and exclude assertions of non-party fault that fail to comply with the rule. *See, e.g., Walton v. Bridgestone/Firestone, Inc.*, 2009 WL 2778441 at *3 (Jan. 16, 2009, D. Ariz.); *State Farm Mutual Auto Ins. Co. v. Mendoza*, 2007 WL 6444600 at *1 (Feb. 2, 2007, D. Ariz.); *Daly v. Royal Ins. Co. of America,* 2002 WL 1768887 at *16-17 (July 17, 2002, D. Ariz.); *Wester v. Crown Controls Corp*, 974 F. Supp. 1284, 1287-88 (D. Ariz. 1996).

The Court will **grant** the motion.  TRW may not assert the comparative fault of Phillip McKnight at trial.

50.    The Court provided the parties with proposed voir dire questions and preliminary jury instructions at the Final Pretrial Conference.  These instructions will be addressed at the March 29, 2012 conference.

51.     The parties shall hold a settlement conference before a magistrate judge to be designated by the Court on or before December 16, 2011.  The parties promptly shall notify the Court if a settlement is reached.

Dated this 14th day of October, 2011.

_____

David G. Campbell
United States District Judge